No. 23-3052

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

K.J., a minor, by and through his guardian ad litem, Kasey L. Johnson,

*Plaintiff—Appellant*

v.

Dr. LAMONT A. JACKSON, in his individual capacity and official
capacity as Interim Superintendent of the San Diego Unified School
District, et al.,

*Defendants—Appellees.*

On Appeal from the United States District Court
for the Southern District of California
No. 3:22-cv-00244-DMS-DDL
Hon. Dana M. Sabraw

## APPELLANT'S REPLY BRIEF

Goriune Dudukgian (SBN 218714)
California Justice Project
35 N. Lake Ave., Suite 710
Pasadena, CA 91101
Tel: (626) 432-7243
Fax: (866) 813-8645

*Attorneys for Plaintiff—Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION .................................................................. 1

ARGUMENT ...................................................................... 2

   I.    DEFENDANTS VIOLATED K.J.'S RIGHT TO DUE PROCESS. ............... 2

      A.   Defendants Extended K.J.'s Suspension and Recommended
         His Expulsion Based on New Charges and New Evidence
         Without Giving Him Any Notice or an Opportunity to
         Respond. .................................................................. 2

      B.   Defendants Misrepresent Facts in Attacking the District
         Court's Ruling on the Constitutional Question. ..................... 15

   II.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY. ........ 17

   III.  K.J. HAS STANDING TO SEEK INJUNCTIVE RELIEF AND HIS CLAIM
      FOR EXPUNGEMENT IS NOT MOOT. ................................... 20

      A.   Defendants and the District Court Confused Standing and
         Mootness. ............................................................... 20

      B.   K.J. Has Established a Substantial Risk of Future Harm. ... 24

   IV.  SUPERINTENDENT JACKSON IS A PROPER DEFENDANT ............... 29

CONCLUSION .................................................................... 33

i

# TABLE OF AUTHORITIES

## Cases

*Ass'n des Eleveurs de Canards et D'oies du Quebec v. Harris,*
   729 F.3d 937 (9th Cir. 2013), *cert. denied,* 135 S. Ct. 398 (2014) ....... 31

*Badgley v. United States,*
   957 F.3d 969 (9th Cir. 2020) ............................................................... 33

*C.B. v. Driscoll,*
   82 F.3d 383 (11th Cir. 1996) ........................................................... 9, 10

*C.R. v. Eugene Sch. Dist. 4J,*
   835 F.3d 1142 (9th Cir. 2016) ........................................................ 11, 12

*Campbell v. Facebook, Inc.,*
   951 F.3d 1106 (9th Cir. 2020) ............................................................. 21

*Carey v. Piphus,*
   435 U.S. 247 (1978) ............................................................................. 15

*Cl. G. v. Siegfried,*
   38 F.4th 1270 (10th Cir. 2022) ............................................................. 6

*Coal. to Defend Affirmative Action v. Brown,*
   674 F.3d 1128 (9th Cir. 2012) ........................................................ 30, 32

*Cole v. Oroville Union High Sch.,*
   228 F.3d 1092 (9th Cir. 2000) ............................................................. 21

*Coplin v. Conejo Valley Unified Sch. Dist.,*
   903 F. Supp. 1377 (C.D. Cal. 1995) .................................................... 14

*Doe v. Mercer Island Sch. Dist. No. 400,*
   288 F. App'x 426 (9th Cir. 2008) ........................................................ 29

*Doe v. Trs. of Indiana Univ.,*
   101 F.4th 485 (7th Cir. 2024) ............................................................ 7, 8

*Empower Texans, Inc. v. Geren,*
   977 F.3d 367 (5th Cir. 2020) ............................................................... 23

ii

*Ex parte Young*,
    209 U.S.123 (1908) ............................................................ 30

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) ............................................ 21

*Flint v. Dennison*,
    488 F.3d 816 (9th Cir. 2007) ............................. 20, 22, 23, 24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ........................................................ 22

*Goss v. Lopez*,
    419 U.S. 565 (1975) .................................................. passim

*Granowitz v. Redlands Unified School District*,
    105 Cal. App. 4th 349 (2003) ........................................ 13

*Hedgepeth v. Washington Metropolitan Area Transit Auth.*,
    386 F.3d 1148 (D.C. Cir. 2004) .................................... 27

*Kruse v. Hawaii*,
    68 F.3d 331 (9th Cir. 1995) .......................................... 28

*L.A. Branch NAACP v. L.A. Unified Sch. Dist.*,
    714 F.2d 946 (9th Cir. 1983) ........................................ 30

*L.A. Cnty. Bar Ass'n v. March Fong Eu*,
    979 F.2d 697 (9th Cir. 1992) ........................................ 30

*Long v. Van de Kamp*,
    961 F.2d 151 (9th Cir. 1992) ........................................ 30

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................ 21

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ........................................ 24

*Meland v. Weber*,
    2 F.4th 838 (9th Cir. 2021) .......................................... 21

*Montoya v. Sanger Unified Sch. Dist.*,
  502 F. Supp. 209 (E.D. Cal. 1980) ..................................................... 8, 9

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  904 F.3d 821 (9th Cir. 2018) ................................................................. 29

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ................................................................................ 22

*Rivas-Villegas v. Cortesluna*,
  595 U.S. 1 (2021) .................................................................................... 17

*Rodriguez v. Cnty. of L.A.*,
  891 F.3d 776 (9th Cir. 2018) ................................................................. 33

*Santa Monica Food Not Bombs v. City of Santa Monica*,
  450 F.3d 1022 (9th Cir. 2006) ............................................................... 27

*Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v.
  U.S. Dep't of Energy*,
  232 F.3d 1300 (9th Cir. 2000) ............................................................... 21

*Waln v. Todd County Sch. Dist.*,
  388 F. Supp. 2d 994 (D.S.D. 2005) .................................................... 8, 19

*Wright v. O'Day*,
  706 F.3d 769 (6th Cir. 2013) ................................................................. 28

*Wynar v. Douglas County Sch. Dist.*,
  728 F.3d 1062 (9th Cir. 2013) .......................................................... 13, 16

*Zanowick v. Baxter Healthcare Corp.*,
  850 F.3d 1090 (9th Cir. 2017) ............................................................... 33

**Statutes**

42 U.S.C. § 1983 .............................................................................. 30, 33

Cal. Educ. Code § 48900 ....................................................................... 31

Cal. Educ. Code § 48900(t) .................................................................. 3, 4

Cal. Educ. Code § 48900.2 .................................................................... 12

Cal. Educ. Code § 48911 ...................................................................... 31

Cal. Educ. Code § 48911(g) .................................................................. 32

Cal. Educ. Code § 48915 ...................................................................... 31

Cal. Educ. Code § 48915(a) .................................................................... 5

Cal. Educ. Code § 48915(a)(1)(A) ......................................................... 4

Cal. Educ. Code § 48915(c) .................................................................... 5

Cal. Educ. Code § 48915(c)(4) .............................................................. 12

Cal. Educ. Code § 48918(a)(1) ................................................................ 6

Cal. Educ. Code § 48918(a)(2) ................................................................ 6

**Rules**

Fed. R. Civ. P. 54(c) ............................................................................ 24

## INTRODUCTION

The constitutional question before this Court is straightforward: Do public school officials violate a student's constitutional rights if they convert a short-term suspension into a long-term suspension, based on *new* charges and *new* evidence, without ever sitting down with the student to discuss the new charges and evidence? The district court got this most important issue right. It held that Defendants violated K.J.'s right to due process when they imposed an indefinite suspension and recommended his expulsion based on new charges and evidence that they never once discussed with K.J.

Defendants now recycle the losing due process arguments they made below. But inapposite cases and straw man arguments did not persuade the district court on this constitutional question and they should not persuade this Court either.

Where the district court went awry was in its analysis of qualified immunity and K.J.'s standing. As to the former, the law is clearly established that public school officials cannot suspend a student for alleged misconduct unless they first provide (1) notice of what the student is accused of doing; (2) an explanation of the evidence

supporting the charges; and (3) an opportunity for the student to respond to the charges. *See Goss v. Lopez*, 419 U.S. 565, 581-84 (1975). Defendants violated all three of these clearly established requirements when they suspended K.J. on February 8, 2022. Thus, they are not entitled to qualified immunity.

As to K.J.'s standing, there is inarguably a fact dispute on this issue. The district court erred in trying to resolve it on summary judgment.

Finally, Defendants seek affirmance based on an alternative argument that the district court never reached, i.e., that Superintendent Jackson is not a proper defendant. Because this issue does not resolve the entire case, this Court should allow the district court to decide it in the first instance on remand.

## ARGUMENT

### I. DEFENDANTS VIOLATED K.J.'S RIGHT TO DUE PROCESS.

#### A. Defendants Extended K.J.'s Suspension and Recommended His Expulsion Based on New Charges and New Evidence Without Giving Him Any Notice or an Opportunity to Respond.

Defendants reprise their argument on appeal that they complied with due process by meeting with K.J. and giving him "the opportunity

2

to provide his version of what happened" when they first suspended him for fighting on February 4, 2022. [Answering Brief ("AB") 15] But Defendants ignore the rule of law set forth in *Goss*: A student's right to "explain his version of the facts" is meaningless unless the student is first "told what he is accused of doing and what the basis of the accusation is." *Goss*, 419 U.S. at 582. Defendants also fail to grapple with the undisputed facts: They *never* told K.J. that he was accused of willfully causing serious injury to another student and they *never* explained the basis for this accusation. [ER-110–13, 124]

The critical facts are worth reviewing here. First, K.J. was given an initial short-term suspension on February 4, 2022 on the grounds that he had "participated" in a fight at school.[1] [AB-15; ER-86, 121] Defendants subsequently decided to impose a greater punishment based on new evidence and different charges. On February 8, 2022,

---

[1] During the February 4, 2022 pre-suspension meeting, Vice Principal Cavaiola informed K.J. of the allegation that "he participated in the February 4 fight" and that "he was being suspended for his involvement in the fight." [AB-4, 15; ER-86] At the risk of stating the obvious, "participating" in a fight is not the same thing, factually or legally, as willfully causing serious injury in a fight. *See* Cal. Educ. Code § 48900(t).

3

Defendants indefinitely extended K.J.'s suspension and recommended his expulsion from La Jolla High School because they concluded, based on new information they received after the initial suspension, that K.J. had, in fact, not only participated in the fight but also caused serious injury to another student and had done so willfully. [ER-112–13, 124]

These new allegations were not merely atmospherics but involved legally significant facts that drastically increased the potential punishment: A student who merely "aids or abets . . . the infliction or attempted infliction of physical injury to another person" may be suspended, *but not expelled*, unless the student "has been adjudged by a juvenile court to have committed, as an aider and abettor, a crime of physical violence in which the victim suffered great bodily injury or serious bodily injury." Cal. Educ. Code § 48900(t). On the other hand, a student who "caus[es] serious physical injury to another person, except in self-defense" may be recommended for expulsion. Cal. Educ. Code § 48915(a)(1)(A).

Critically, K.J. was never given the opportunity to respond to the new charges before Defendants made the extreme,[2] and entirely

---

[2]     Under the San Diego Unified School District's ("SDUSD") written

4

discretionary,[3] decision to recommend his expulsion. [ER-72–73, 79–80, 113] Defendants never told K.J. that anyone was injured in the fight, much less that the injury was serious and that Defendants believed that he had willfully caused the injury. [ER-113] Thus, K.J. never had the chance, required by *Goss*, to admit or deny the new accusation, alert school officials to "the existence of disputes about facts," and make "arguments about cause and effect."[4] *Goss*, 419 U.S. at 583-84.

---

policies, a student should not be expelled for a first "Level 3" offense – which includes an offense where a student "[w]illfully caused serious injury, except in cases of demonstrated self-defense (no lethal force)" – without first attempting lesser interventions. [ER-137, 142]

[3] The allegations made in the February 8, 2022 Report on Suspension are not grounds for a mandatory expulsion under California law. *Compare* Cal. Educ. Code § 48915(a) (granting principal or superintendent discretion to not recommend expulsion for enumerated offenses if they determine that "expulsion should not be recommended under the circumstances or that an alternative means of correction would address the conduct") *with* Cal. Educ. Code § 48915(c) (*mandating* an expulsion recommendation for included offenses).

[4] Vice Principal Cavaiola admitted that he had no direct evidence that K.J. injured anyone in the fight. [ER-64, 83] And yet, Defendants never heard from K.J. on this critical issue. *See Goss*, 419 U.S. at 584 ("[A]n informal give-and-take between student and disciplinarian . . . will add little to the factfinding function where the disciplinarian himself has witnessed the conduct forming the basis for the charge. But things are not always as they seem to be, and the student [must] at least have the opportunity to characterize his conduct and put it in what he deems the proper context.").

Aside from ignoring these undisputed facts, Defendants also ignore the reality that they effectively converted K.J.'s suspension from "from brief to long-term." [ER-15] K.J. was initially suspended for only three days [ER-121], which is considered a "short suspension" under *Goss* and requires only "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id.* at 581. However, on February 8, 2022, Defendants extended K.J.'s suspension *indefinitely*, pending the outcome of his expulsion hearing. [ER-112, 124] In California, a suspension pending expulsion can last up to 40 school days or longer,[5] even if the student is ultimately exonerated of the charges. Such an indefinite long-term suspension "may require more formal procedures" under *Goss*. *Id.* at 584; *see also Cl. G. v. Siegfried*, 38 F.4th 1270, 1281 (10th Cir. 2022).

Under these circumstances, where a student receives additional

---

[5] An expulsion hearing must be held "within 30 school days after the date the principal or the superintendent of schools determines that the pupil has committed any of the acts enumerated in Section 48900, unless the pupil requests, in writing, that the hearing be postponed." Cal. Educ. Code § 48918(a)(1). The governing board then has an additional 10 school days to issue a decision on whether to expel the pupil. *Id.* at § 48918(a)(2).

discipline based on new or different charges, courts uniformly require schools to give the student an opportunity to respond to the new charges. Consider the Seventh Circuit's recent decision in *Doe v. Trustees of Indiana University*, 101 F.4th 485 (7th Cir. 2024). There, a medical student was initially suspended for physically abusing a romantic partner. *See id.* at 488-89. After a further investigation, the school moved to expel the student based on new evidence.[6] *See id.* at 489. In analyzing the student's due process claim, the court observed that the university had provided "plenty of process" when imposing the initial suspension but inadequate due process vis á vis the subsequent decision to expel the student. *Id.* at 490. As the court explained:

> [T]he fact that Doe received lots of process does not mean that he had an opportunity to be heard when it mattered most: after his application to the [business school]. Before his application, he was under a year's suspension; afterward, he was expelled . . . . Doe was allowed to communicate in writing with the Prior Misconduct Review Committee [regarding the proposed suspension], but after that—nothing.

*Id.* at 490. The court thus concluded that the school's expulsion process

---

[6] The school accused the student of submitting a false or misleading business school application. *See Doe*, 101 F.4th at 489.

did not "satisfy even the minimal requirement(s) of *Goss*." *Id.*

Another case directly on point is *Waln v. Todd County School District*, 388 F. Supp. 2d 994 (D.S.D. 2005). There, a high school student was suspended for fighting. *See id.* at 996-97. The principal informed the student of the accusation that he "had been involved in a fight" and would receive "a short-term suspension." *Id.* Subsequently, the principal imposed a long-term suspension for the rest of the remaining school year on charges that the student had committed an "aggravated assault" during the fight. *Id.* at 998, 1002. The court held that the extension of the student's suspension violated the requirements of *Goss*, because the student "was provided with no meaningful opportunity to deny the aggravated assault charge or present his side of the story." *Id.* at 1004. Instead, the principal "simply converted his short-term suspension to a long-term suspension," without giving the student "any meaningful opportunity to mount a challenge" to the new charges. *Id.* at 1006-07.

A third case, which the district court found instructive, is *Montoya v. Sanger Unified School District,* 502 F. Supp. 209 (E.D. Cal. 1980). [ER-13–15] In *Montoya*, two students were initially suspended for five

8

days for fighting. *See id.* at 210-11. Before the initial suspensions ended, the students were recommended for expulsion and their suspensions were "extended to the date of the expulsion hearing. No conference, informal or otherwise, preceded the notice of the extended expulsion." *Id.* at 210-11. The court held that the extension of the students' suspensions without "a separate hearing" violated due process. *See id.* at 213. The court explained that "[a]ny extension of [a student's] original suspension must be treated as a separate suspension, and the due process requirements of *Goss v. Lopez* . . . complied with." *Id.*

Faced with these unanimous decisions, Defendants cast about for a convincing argument. But the cases they cite actually help K.J. or involve different issues that are not pertinent here. Start with *C.B. v. Driscoll*, 82 F.3d 383 (11th Cir. 1996). There, school officials learned that a student was planning to make a drug sale at school. *See id.* at 385. They questioned the student and "informed him that it had been reported that he was in possession of drugs." *Id.* The student was ordered to empty his pockets and removed from his coat two plastic packets that appeared to contain marijuana. *See id.* The student "was given a chance to explain the source of the packets," and he denied

9

knowing anything about the packets. *Id.* The student was not immediately suspended while the school and police continued investigating. *See id.* The following week, the principal met again with the student, and he was given another opportunity to explain himself. *See id.* After the second meeting, the student was suspended for nine days for possession of a "look-alike" illegal substance.[7] *See id.*

The Eleventh Circuit rejected the student's claim that he was suspended without due process. *See id.* at 388. As the court explained, *Goss* requires school administrators to "*tell a student what they heard or saw*, ask why they heard or saw it, and allow a brief response . . . ." *Id.* at 386 (emphasis added). The school had complied with these requirements by informing the student that he was being suspended for bringing a prohibited substance to school and then giving the student two opportunities to discuss the accusation with administrators before any suspension was imposed. *See id.* at 388.

Here, in contrast, Defendants moved to expel K.J. without ever

---

[7]    Tests revealed that the substance was not marijuana, but the school handbook also prohibited the possession of "substances that appear to be illegal drugs . . . ." *C.B.*, 82 F.3d at 385.

telling him "what they heard or saw," i.e., that K.J. had "willfully" caused "serious injury" during the fight at school. The outcome in *C.B.* would have been very different if the school administrators had ultimately suspended the student on different charges, such as bringing a weapon instead of drugs to school, or if they subsequently decided to impose a harsher punishment (such as expulsion) because another student overdosed on the drugs, without ever telling the student about these new game-changing developments. Thus, even if this Court adopts the Eleventh Circuit's formulation of the *Goss* standard, K.J. still wins.

Defendants next cite to this Court's decision in *C.R. v. Eugene School District 4J*, 835 F.3d 1142 (9th Cir. 2016). There, a student, C.R., was suspended for two days for sexually harassing two younger students. *See id.* at 1145-47. Before the suspension, an administrator met twice with C.R., informed him of the school's "suspicion that the younger students had been harassed," and asked C.R. for "the whole story." *Id.* at 1147, 1154. During the second meeting, C.R. admitted to making comments about oral sex and that "his behavior was inappropriate." *Id.* at 1147. This Court held that the suspension

11

complied with *Goss* because C.R. had received "notice of the charges against him and an opportunity to tell his side of the story." *Id.* at 1153. This Court rejected C.R.'s argument that due process demanded even more, i.e., that school officials needed to take "the extra step" of informing him of "the specific nature of the allegations" and explaining "exactly *how* his conduct violated the specific rules at issue." *Id.* at 1154. This Court succinctly stated that *Goss* does not require "a bill of particulars." *Id.*

Here, unlike in *C.R.*, Defendants never informed K.J. of the basic charges that led to his recommended expulsion on February 8, 2022. That is a far cry from demanding a bill of particulars. And again, the outcome in *C.R.* would have been different if, instead of a short suspension for sexual harassment, the school later recommended the student's expulsion for committing a "sexual battery" during the same event, without ever informing the student of the new charges.[8]

---

[8]     In California, a student *may* be suspended from school or recommended for expulsion for sexual harassment, but expulsion is *mandatory* for a student who commits a "sexual assault" or "sexual battery." *Compare* Cal. Educ. Code § 48900.2 *with* Cal. Educ. Code § 48915(c)(4).

For the same reasons, *Granowitz v. Redlands Unified School District*, 105 Cal. App. 4th 349 (2003) is readily distinguishable. As in *C.R.*, the question in *Granowitz* was whether a student suspended for sexual harassment was "provided with *enough detail* to allow him to refute the charges . . . ." *Id.* at 356 (emphasis added). The court held that the school's principal "adequately explained the reasons for the suspension" because the principal had "offered sufficient descriptions of diddling and simulated masturbation to allow plaintiff to deny he had ever engaged in such distinctive and inappropriate activity."[9] *Id.* This case, in contrast, is not about the sufficiency of *details*; K.J. was never even informed of the basic charges against him, i.e., that he had "[w]illfully caused serious injury except in self-defense." [ER-124]

The rest of the cases cited by the Defendants merit only a brief response. In *Wynar v. Douglas County School District*, 728 F.3d 1062, 1072-73 (9th Cir. 2013), this Court held that a school district's failure to

---

[9]    In fact, in a meeting with the student and his parents (one of whom was an attorney), the principal had described *in detail* the four kinds of objectionable behavior by the student, including "inappropriate sexual comments and gestures; simulating masturbation or sex; groping or 'diddling' of other boys; and grabbing a girl by the buttocks." *Granowitz*, 105 Cal. App. 4th at 353.

"follow exactly" its own regulatory procedures for a 10-day suspension did not, by itself, make the suspension unconstitutional. That is of course true but irrelevant here. As the district court noted, *Wynar*'s holding does not apply because "Plaintiff's claim does not rely on Defendants' failure to comply with SDUSD's policies or procedures. Rather, Plaintiff's claim relies on Defendants' failure to comply with the requirements of *Goss*."[10] [ER-16]

Finally, Defendants rely on *Coplin v. Conejo Valley Unified School District*, 903 F. Supp. 1377, 1381-83 (C.D. Cal. 1995), where the court held that *Goss* does not give students the right to know the identity of their accusers before an expulsion hearing. It is not clear why Defendants have cited *Coplin*, in a string cite with no analysis. [AB-13–14] To be clear, K.J. has never claimed that Defendants violated his constitutional rights by failing to inform him of the identity of his accusers. [ER-7]

---

[10]     The district court also rejected Defendants' related and equally baseless argument, repeated in a footnote on appeal, that K.J. "improperly seeks to replace *Goss*" with the requirements of the California Education Code. [AB-12 n.4; ER-15]

## B. Defendants Misrepresent Facts in Attacking the District Court's Ruling on the Constitutional Question.

The district court began its summary judgment order by noting that "[t]he facts giving rise to this case are largely undisputed . . . ." [ER-10] The district court then concluded, based on these undisputed facts, that Defendants violated K.J.'s "constitutional right to due process in connection with the extension of his suspension on February 8, 2022." [ER-17] On appeal, Defendants misrepresent some facts in trying to undermine the district court's ruling.

First, in an obvious appeal to the Court's emotions, Defendants state that another student "suffered a head injury" in the February 4, 2022 fight and a "staff member suffered a concussion while attempting to restore order." [AB-1] Actually, these "facts" are highly disputed. [ER-10, 112] More to the point, Vice Principal Cavaiola admitted that there is no evidence that K.J. caused these alleged injuries. [ER-64, 83] Most importantly, these disputed facts are not even relevant to the constitutional issue at hand: Even if Defendants, in hindsight, were justified in suspending K.J., they *still* had to comply with due process. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978).

Defendants also claim that "on the next school day" after Cavaiola

15

watched the video footage of the fight, K.J. was "informed that he would be recommended for expulsion due to the injuries suffered by the student victim and the staff member who broke up the fight." [AB-1] This is simply false: It is undisputed that neither Cavaiola, nor any other SDUSD employee, communicated with K.J. after he was sent from school on February 4, 2022. [ER-16–17, 113]

Defendants are conflating K.J. with his parents.[11] But *Goss* makes clear that it is "the student" who has a constitutional right to receive "oral or written notice of the charges against him" and "an opportunity to explain his version of the facts . . . ." 419 U.S. at 581-82. This Court has also recognized that a student and his or her parents are not interchangeable when it comes to the requirements of *Goss*. *See Wynar*, 728 F.3d at 1073.

Finally, Defendants mention a "pre-expulsion meeting" with SDUSD's Placement and Appeals Department. [AB-1, 5–7, 29-30] This was not the type of hearing, contemplated by *Goss*, where K.J. could "present his side of the story." *Goss,* 419 U.S. at 581. The purpose of the

---

[11]    The "updated suspension/expulsion paperwork" was *only* sent to K.J.'s parents on February 8, 2022. [ER-112–13]

meeting was to go over administrative matters, such as "how the process works, what to expect over the next few weeks," and whether K.J.'s parents wanted to "accept the terms of the expulsion or . . . to request a hearing." [ER-128] K.J.'s parents were told that he was not required to be at the "pre-expulsion meeting," so he did not attend. [ER-114, 128] K.J.'s parents were also prevented from offering a defense at the meeting; they were specifically told that "any defense to the factual allegations underlying [K.J.'s] suspension and recommended expulsion would have to be presented at the expulsion hearing." [ER-114–15] Finally, the "pre-expulsion meeting" was scheduled more than a week *after* the Defendants imposed the second suspension and recommended expulsion on February 8, 2022. [ER-112–14] This violated the general rule under *Goss* that "notice and hearing should precede removal of the student from school." *Goss*, 419 U.S. at 582.

## II. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendants claim as a fall-back argument that they are entitled to qualified immunity for their actions. [AB-28–30] Qualified immunity does not apply because the Defendants violated clearly established federal law. *See, e.g., Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021).

17

Indeed, the law in this area has been settled for half a century. In *Goss*, the Supreme Court established three basic and irreducible requirements for all disciplinary actions that result in a student's exclusion from school. First, the student must be given "oral or written notice of the charges against him." *Goss*, 419 U.S. at 581. Second, the student must be given "an explanation of the evidence the authorities have" to support the charges. *Id.* And third, the student must be given "an opportunity to present his side of the story." *Id.*

In his opening brief, K.J. explained how Defendants violated all three of these clearly established requirements. In response, Defendants now try to reframe the issue. They argue that there is "no case law that requires a school official who has already given the student the opportunity to tell his story, to then re-do this interview with the student because he has obtained another account of what occurred." [AB-30] According to the Defendants, the "real issue" is whether they had to give K.J. an opportunity to "retell his story a second time." [*Id.*]

In trying to obscure their violations of *Goss*, Defendants distort K.J.'s claim in two ways. First, K.J. has never argued that his right to a

18

second hearing attached simply because the Defendants obtained "another account of what occurred." Rather, *Goss* is very clear that the event that triggers a student's right to due process is when a school imposes discipline that has the effect of excluding the student "from the educational process, with all of its unfortunate consequences." *Goss*, 419 U.S. at 579. Here, K.J.'s right to a second hearing was triggered not just because the Defendants obtained new evidence, but because the Defendants acted on the new evidence by imposing *new discipline* that significantly increased K.J.'s exclusion from school.

Second, the "real issue" is not *how many* interviews Defendants needed to have with K.J., but rather the substance of the information conveyed during the totality of the meetings. *See Waln*, 388 F. Supp. 2d at 1003 (explaining that school officials should have notified the student of his right to an adjudicatory hearing "contemporaneously with the original suspension, so that, in the event the suspension was converted to a long-term suspension, Waln would have already been apprised of his options."). If Defendants had told K.J. before the original suspension that he was suspected of willfully causing a serious injury during the fight, explained the evidence that supported those charges, informed

K.J. that he faced expulsion, and then simply allowed him to respond to the charges, there would have been no need for a second interview. But, of course, none of those things happened.

At the end of the day and after considering the totality of all communications, K.J. never received the three procedural safeguards required by *Goss* before his indefinite suspension and recommended expulsion on February 8, 2022. Because the constitutional violation here is obvious, based on a straightforward application of *Goss*, the Defendants are not entitled to qualified immunity.

## III. K.J. HAS STANDING TO SEEK INJUNCTIVE RELIEF AND HIS CLAIM FOR EXPUNGEMENT IS NOT MOOT.

### A. Defendants and the District Court Confused Standing and Mootness.

Defendants argue, and the district court held, that K.J. does not have standing to seek expungement of the unconstitutional suspension. [ER-20–22; AB-16–28] Defendants' argument on this issue confuses the related, but analytically distinct, concepts of standing and mootness. So did the district court, when it refused to follow this Court's controlling precedent in *Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007). [ER-21]

Both standing and mootness are "jurisdictional issues deriving from

the requirement of a case or controversy under Article III." *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1098 (9th Cir. 2000). But there are some fundamental differences between the two doctrines. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120 (9th Cir. 2020). One key distinction concerns the relevant time period for the court's inquiry. There is a "longstanding rule" that standing must be "assessed under the facts existing when the complaint is filed." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992). Mootness, on the other hand, requires courts to "consider factual developments that occurred after the suit was filed." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 681 (9th Cir. 2023) (en banc) (citing *Meland v. Weber*, 2 F.4th 838, 849 (9th Cir. 2021)). A second fundamental difference concerns the burden of proof. The party invoking federal jurisdiction bears the burden of establishing standing, *Lujan*, 504 U.S. at 561, whereas "[t]he party asserting mootness has the *heavy burden* of establishing that there is no effective relief remaining for a court to provide." *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. U.S. Dep't of Energy*, 232 F.3d 1300, 1303 (9th Cir. 2000) (emphasis added). This in turn leads to another key

21

divergence: A threat of future harm "may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Ultimately, these distinctions highlight the fact that "mootness, unlike standing, is a flexible justiciability doctrine." *Flint*, 488 F.3d at 824 (citation omitted).

Here, the district court erred by analyzing its jurisdiction to expunge K.J.s suspension under the framework of standing instead of mootness. K.J. clearly had standing to seek injunctive relief when he filed his complaint on February 22, 2024. [ER-209–20] At the time, he was still suspended while awaiting his expulsion hearing. [ER-115] In his complaint, K.J. sought an injunction allowing him to return to school right away and requiring Defendants to produce the videos of the fight. [ER-219] Since the suspension was still in effect, K.J. was experiencing "continuing, present adverse effects" from the unconstitutional suspension and thus had standing to seek injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Thereafter, Defendants rescinded K.J.'s expulsion and produced the relevant videos in discovery. [ER-115] They argued that K.J. had "no

22

ongoing harm that would allow for application of the *Ex parte Young* exception." [ER-19; SER-62] This argument about "ongoing harm," based on events that occurred after the lawsuit was filed, signals that Defendants were actually making a mootness argument in the guise of challenging K.J.'s standing. *See, e.g., Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020) ("Geren argues that this case is moot because . . . there is no ongoing harm.").

Since the relevant issue here is mootness, the district court erred by casting aside this Court's controlling precedent in *Flint*. There, this Court considered a student's lawsuit challenging the University of Montana's campaign spending limit for student government. *See Flint*, 488 F.3d at 820. This Court did not question the student's standing to seek declaratory and injunctive relief, because he was still enrolled at the University when the case was filed. *See id.* at 822. Instead, this Court considered whether the student's graduation had rendered his claims moot. *See id.* at 823-24. This Court held that the possibility that the student would experience future harm from the negative information contained in his disciplinary file, which this Court noted "may jeopardize the student's future employment or college career," was

sufficient ongoing harm to avoid mootness of the student's expungement claim. *Id.* at 824.

*Flint* is directly on point and the same analysis applies here. While much of K.J.'s claim for prospective injunctive relief was mooted by Defendants, this Court still has jurisdiction to grant meaningful relief to K.J. in the form of expungement of the February 8, 2022 Report on Suspension.[12] *See id.* ("So long as a former student's record contains evidence of disciplinary sanctions, and the former student seeks an order requiring school officials to expunge from school records all mention of the disciplinary action, the action is not moot.").

**B. K.J. Has Established a Substantial Risk of Future Harm.**

Even if this Court applies the stricter standing requirements to K.J.'s expungement claim, the record establishes "a credible threat of future harm" that is sufficient for Article III standing. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 709 (9th Cir. 2020). First, there is a substantial risk that school administrators will use the record of the

---

[12] K.J. did not specifically pray for expungement in his complaint. [ER-219–20] However, under Federal Rule of Civil Procedure 54(c), a court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

unconstitutional suspension to impose an enhanced punishment on K.J. in the future. Defendants do not deny (nor could they) that school administrators have to consider a student's prior disciplinary history when deciding an appropriate punishment under SDUSD's "Restorative Discipline Policy." [ER-132–47; *see also* ER-88, 149–160] The policy includes a punishment matrix which directs school administrators to impose a wide variety of increasingly punitive disciplinary responses – ranging from mindfulness strategies and seating changes in class to out-of-school suspensions, permissive expulsions, and mandatory expulsions – based on the severity of the behavior and the student's prior disciplinary history. [ER-135–43]

Defendants argue, however, that the possibility that K.J. will engage in a future fight or other misconduct warranting a disciplinary response is too speculative to confer standing.[13] [AB-19–22] Vice Principal Cavaiola disagrees. At his deposition, Cavaiola conceded that K.J. remains "at risk of engaging in future fights at school" and gave

---

[13] Defendants also assume that K.J. would have to be "the aggressor" in a future fight to be "worthy of discipline." [AB-21] There is nothing in SDUSD's written policies that limits discipline to only the aggressor of a fight. [ER-132–72]

25

concrete reasons for his opinion.[14] [ER-81–82] Obviously, and contrary to Defendants' argument, this testimony from one of the Defendants is not "counsel's speculation that [K.J.] might get into a fight again in the future." [AB-10] At a minimum, this evidence – which the district court failed to consider in its summary judgment order [ER-20–22] – creates a genuine issue of material fact on the question of standing.

Second, Defendants do not dispute the general principle that a student's tarnished disciplinary record constitutes an injury in fact because it may jeopardize the student's future employment or college admission prospects.[15] Instead, Defendants make two factual arguments for why there is no likelihood of harm in this particular case.

First, Defendants state that "the District's disciplinary records are kept confidential and will not be shared with colleges or potential

---

[14]   Defendants argue that K.J. "only presents Cavaiola's testimony *that he does not know* if [K.J.] will be involved in a future fight . . . ." [AB-21 (emphasis added)] Defendants are misstating Cavaiola's deposition testimony. When he was first asked whether "K.J. is at risk of engaging in fights at school," Cavaiola answered that he did not know. [ER-81] However, upon follow-up questioning, Cavaiola confirmed that his opinion had "not changed" that K.J. was "still at risk of having fights at school," because "[t]he student refuses to do restorative practice . . . ." [ER-82]

[15]   See cases cited in Section II.B of K.J.'s opening brief.

employers without [K.J.'s] express consent." [AB-22] This argument

ignores the fact that K.J. will have to *self-disclose* the fact of his

suspension and recommended expulsion along with the underlying

charges that he willfully caused serious injury. For example, under the

"Common App" college application form that is currently used by more

than 1,000 colleges,[16] students must disclose *each* "disciplinary

violation" for which they were "found responsible" for "behavioral

misconduct" from the ninth grade forward. [FER-12] Thus, even if

Defendants will not publish the information in K.J.'s disciplinary file,

the need for self-disclosure is sufficient to confer standing. *See*

*Hedgepeth v. Washington Metropolitan Area Transit Authority*, 386 F.3d

1148, 1150-52 (D.C. Cir. 2004) (holding that minor had standing to seek

expungement of arrest record because it would "relieve [her] of the

---

[16]     *See* https://www.commonapp.org/explore/ (visited July 8, 2024)
(listing 1,000+ colleges that use the "Common App" application form).
This Court may take judicial notice of the "Common App" application
form. *See* Fed. R. Evid. 201(b)(2) (authorizing courts to judicially notice
a fact that is not subject to reasonable dispute because it . . . can be
accurately and readily determined from sources whose accuracy cannot
reasonably be questioned."); *Santa Monica Food Not Bombs v. City of
Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial
notice of application form available for download on public website).

[future] burden of having to respond affirmatively to the familiar question, 'Ever been arrested?' on application, employment, and security forms.").

Second, Defendants argue that K.J. has not proffered any evidence of his "intention or ability to attend college" or concerning his future employment interests. [AB-22] But the prospect that a child will one day, upon reaching the appropriate age, apply for either college or employment is so predictable that courts have found standing without requiring the submission of evidence to prove the obvious. *See*, *e.g.*, *Wright v. O'Day*, 706 F.3d 769, 774 (6th Cir. 2013) ("D.W.'s future interest in pursuing certain types of employment is unknown and uncertain, but this uncertainty does not keep D.W. from being affected now by being listed as a child abuser.").

Finally, the two expungement cases cited by the Defendants are not helpful because they are either factually distinct or non-precedential. [AB-18, 26] In *Kruse v. Hawaii*, 68 F.3d 331, 335 (9th Cir. 1995), this Court held that a parent lacked standing to seek expungement of child protection records because she had not even "shown that the negative information she seeks to have expunged even

28

exists in her record." Here, in contrast, there is no question that a record of the unconstitutional suspension exists and will be maintained by Defendants in an "internal disciplinary file." [ER-87–88]

The other case cited by Defendants, *Doe v. Mercer Island School District No. 400*, 288 F. App'x 426 (9th Cir. 2008), is non-precedential. *See, e.g., Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 836 n.2 (9th Cir. 2018) (explaining that non-precedential opinion "does not control . . . and carries only persuasive weight"). Nor does it have any persuasive value given the lack of meaningful analysis.

## IV. SUPERINTENDENT JACKSON IS A PROPER DEFENDANT

As an alternative grounds for affirmance, Defendants argue that "Superintendent Jackson is not a proper defendant in either his official or personal capacities." [AB-31] At most, this is an argument for *partial* affirmance, because it does not apply to the other two Defendants. Since it would not resolve the entire case, this Court should allow the district court to consider the argument in the first instance. If this Court elects to reach this issue, it should hold that Superintendent Jackson is a proper defendant.

State officials sued in their official capacity under 42 U.S.C. §

29

1983 must have "some connection" with the allegedly unconstitutional state action. *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). The connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *L.A. Cnty. Bar Ass'n v. March Fong Eu*, 979 F.2d 697, 704 (9th Cir. 1992). For instance, a governor's or attorney general's general duty to enforce state law is not a sufficient connection. *See Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992); *L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 714 F.2d 946, 953 (9th Cir. 1983).

On the other hand, where a statute gives a specific state official the duty or power to act, the necessary connection under *Ex parte Young* is satisfied. For example, in *Eu*, this Court held that the Governor and Secretary of State of California had a specific connection to the challenged statute prescribing the number of judges, because the former had "a duty to appoint judges to any newly-created judicial positions," and the latter had "a duty to certify subsequent elections for those positions." *Eu*, 979 F.2d at 704; *see also Ass'n des Eleveurs de*

*Canards et D'oies du Quebec v. Harris,* 729 F.3d 937, 943 (9th Cir. 2013), *cert. denied,* 135 S. Ct. 398 (2014) (holding that California's Attorney General was a proper defendant in a lawsuit challenging a state statute banning the sale of foie gras because, under the California Constitution, the Attorney General has direct supervisory authority over district attorneys and the duty to prosecute violations of state law).

Defendants argue that Superintendent Jackson is not a proper defendant because, they claim, he had no official connection to K.J.'s suspension or recommended expulsion. [AB-31] In fact, under California law, Superintendent Jackson is statutorily vested with the power to enforce state law governing the suspension and expulsion of SDUSD students. Under California Education Code § 48900, a student "shall not be suspended from school or recommended for expulsion, unless the superintendent of the school district or the principal of the school in which the pupil is enrolled determines that the pupil has committed" one of the specified offenses under the statute. Section 48911 governs the procedural rules that the "principal, the principal's designee, or the district superintendent of schools" must follow when suspending a student. Section 48915 authorizes only "the principal or the

31

superintendent of schools" to recommend a student's expulsion. And finally, section 48911(g) authorizes only "the governing board of the school district, the district superintendent of schools or other person designated by the district superintendent of schools" to extend a student's suspension pending an expulsion determination.[17] In light of these statutes, there is no question that Superintendent Jackson had a direct and personal connection to the due process violation alleged in this case. *Cf. Coal. to Defend Affirmative Action*, 674 F.3d at 1134 (holding that President of the University of California was a proper defendant in a lawsuit challenging admission criteria).

As for K.J.'s personal capacity claim against Superintendent Jackson, Defendants do not even begin to develop an argument. [AB-31] Defendants merely state, in conclusory terms, that the personal capacity claim should be dismissed "for the same reason." [*Id.*] But the standard for liability is not the same. *Compare Coal. to Defend Affirmative Action*, 674 F.3d at 1134 (stating standard for official

---

[17]    Under SDUSD's written policies, the decision to extend a student's suspension pending expulsion can *only* be made by the superintendent or a person empowered by the superintendent. [ER-156]

32

capacity claim under *Ex parte Young*) *with Rodriguez v. Cnty. of L.A.,*
891 F.3d 776, 798 (9th Cir. 2018) (stating standard for the personal
liability of supervisory officials under 42 U.S.C. § 1983). A supervisory
official, like Superintendent Jackson, "may be liable in his individual
capacity for his own culpable action or inaction in the training,
supervision, or control of his subordinates; for his acquiescence in the
constitutional deprivation; or for conduct that showed a reckless or
callous indifference to the rights of others." *Rodriguez*, 891 F.3d at 798
(citations and quotation marks omitted).

Defendants do not address the standard for supervisory liability in
their brief on appeal. [AB-31] Nor did they do so in the district court.
[SER-70–71] Defendants have therefore waived this argument. *See
Badgley v. United States*, 957 F.3d 969, 978-79 (9th Cir. 2020)
("[A]rguments presented in . . . a cursory manner are waived.");
*Zanowick v. Baxter Healthcare Corp.*, 850 F.3d 1090, 1095 n.11 (9th Cir.
2017) ("[D]efendants waived this issue by failing to raise it in the
district court.").

## CONCLUSION

For the foregoing reasons, this Court should reverse the district

33

court's summary judgment in favor of Defendants on qualified

immunity and standing.

Dated: July 22, 2024

By: /s/ Goriune Dudukgian
Goriune Dudukgian (SBN 218714)
**California Justice Project**
35 N. Lake Ave., Suite 710
Pasadena, CA 91101
Tel: (626) 432-7243
Fax: (866) 813-8645

*Attorneys for Plaintiff—Appellant
K.J., a minor, by and through his
guardian ad litem, Kasey L. Johnson*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated      .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                             **Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*